1  Megan A. Richmond (SBN 170753)
2  MEGAN A. RICHMOND, APC
   9255 Towne Centre Drive, Suite 500
3  San Diego, California 92121
   Telephone: (858) 622-7878
4  Facsimile:  (858) 622-1411
   megan@therichmondfirm.com
5
6  Gregory M. Garrison (SBN 165215)
   GREGORY M. GARRISON, APC
7  9255 Towne Centre Drive, Suite 500
   San Diego, California 92121
8  Telephone: (858) 622-7878
   Facsimile:  (858) 622-1411
9  greg@garrisonapc.com

10
   Alexander E. Papaefthimiou (SBN 236930)
11 LAW OFFICE OF ALEXANDER E. PAPAEFTHIMIOU
   215 E. Daily Drive, Suite 28
12 Camarillo, California 93010
   Telephone: (805) 366-3909
13 Facsimile:  (805) 585-5410
14 alex@aplitigation.com

15 *Class Counsel*

16            **UNITED STATES DISTRICT COURT**

17     **CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

18
19 DAVID DENKIN, individually and on          CASE NO.  **5:16-cv-00044-JGB-KK**
   behalf of all others similarly situated,

20            Plaintiffs,                      **MEMORANDUM OF POINTS
         v.                                    AND AUTHORITIES IN**
21                                             **SUPPORT OF UNOPPOSED**
   COUNTY OF SAN BERNARDINO, a                 **MOTION FOR APPROVAL OF**
22 legal subdivision of the State of           **SETTLEMENT AND ATTORNEY**
   California, and DOES 1–10, inclusive.       **FEES UNDER FAIR LABOR**
23                                             **STANDARDS ACT**
            Defendants.
24
25                                             Date:        August 14, 2017
26                                             Time:        9:00 a.m.
                                               Courtroom:   1
27                                             Judge:       Hon. Jesus G. Bernal
28

# **TABLE OF CONTENTS**

I.      INTRODUCTION………….…...………………………………….....  1

II.     SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS...  2

        A.     Nature of the Claims and Defenses………………………………...  2

        B.     The Conditionally Certified Class and Class Notice…………..…….  3

        C.     Investigation and Discovery………...……………………………...  5

        D.     Reasonable Estimate of Amount of Recovery…………………..…….  6

        E.     Settlement Negotiations………………………..…………….……….  6

III.    TERMS OF THE SETTLEMENT………………………………………….....  8

IV.     THE SETTLEMENT IS FAIR AND REASONABLE TO THE CLASS…..  9

V.      THE AGREED UPON SERVICE PAYMENT IS REASONABLE……...  13

VI.     THE AGREED UPON FEES AND COSTS ARE REASONABLE……...  16

        A.     Plaintiff is Entitled to His Claimed Costs and Expenses……….…....  16

        B.     The Requested Attorney Fees are Reasonable Under the "Percentage
               of the Recovery" Calculation Method……...………...……..……..  17

        C.     The Requested Attorney Fees are Reasonable Under the "Lodestar"
               Calculation Method……...………...……..……………………….  20

               1.     The Number of Hours Worked are Reasonable……..……..  21

               2.     The Requested Hourly Rates are Reasonable……..…………  23

               3.     Plaintiff is Entitled to a Multiplier………………..…………  24

VII.    CONCLUSION…........................................................................................  25

# TABLE OF AUTHORITIES

## Statutes

28 U.S.C. § 1920 ………………………………………………… 16

29 U.S.C. § 215(a)(3) …………………………………………….. 20

29 U.S.C. § 216(b) ………………………………………………  16

29 U.S.C. § 255(a) ……………………………………………...  11

## Cases

*Aguilar v. Wawona Frozen Foods*,
  2017 U.S. Dist. LEXIS 76751 (E.D. Cal. 2017) …....…….…...… 15, 17-19

*Atwood v. PCC Structurals, Inc.*,
  2016 U.S. Dist. LEXIS 45737 (Dist. Or. 2016) …..………………..… 16

*Barbosa v. Cargill Meat Sols. Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) …..………………..…………...… 23

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) …..………………..…………...… 19

*Blackwell v. Foley*,
  724 F. Supp. 2d 1068 (N.D. Cal. 2010) …..………….…..………… 21

*Blum v. Stenson*,
  465 U.S. 886 (1984) …..……………….....……………..…………… 23

*Bouman v. Block*,
  940 F.2d 1211 (9th Cir. 1991) …..………………..…………….…… 23

*Boyd v. Bank of Am. Corp.*,
  2014 U.S. Dist. LEXIS 162880 (C.D. Cal. 2014) …..……………...… 18

*Bravo v. Gale Triangle, Inc.*,
  2017 U.S. Dist. LEXIS 77714 (C.D. Cal. 2017) …..…………………. 19

## <u>TABLE OF AUTHORITIES</u>
### (continued)

*Chambers v. Whirlpool Corp.*,
    214 F. Supp. 3d 877 (C.D. Cal. 2016) ……………………………………..… 25

*Charlebois v. Angels Baseball LP*,
    2012 U.S. Dist. LEXIS 91069 (C.D. Cal. 2012) ……………………….…. 22

*Dail v. George A. Arab, Inc.*,
    391 F. Supp. 2d 1142 (M.D. Fla. 2005) ……………….……………….…. 10

*Downey Surgical Clinic, Inc. v. OptumInsight, Inc.*,
    2016 U.S. Dist. LEXIS 145000 (C.D. Cal. 2016) ……………………...… 18

*Garcia v. Gordon Trucking, Inc.*,
    2012 U.S. Dist. LEXIS 160052 (E.D. Cal. 2012) ………………...……….… 18

*Haworth v. State of Nevada*,
    56 F.3d 1048 (9th Cir. 1995) ………………………………………………… 16

*Herold v. Hajoca Corp.*,
    864 F.2d 317 (4th Cir. 1988) ………………………………………….…. 16

*Hoffman v. Constr. Protective Servs.*,
    2006 U.S. Dist. LEXIS 100559 (C.D. Cal. 2006) …………………...…. 16

*In re Cathode Ray Tube Antitrust Litigation*,
    2016 U.S. Dist. LEXIS 102408 (C.D. Cal. 2016) ……….……………….. 25

*In re High-Tech Emple. Antitrust Litigation*,
    2015 U.S. Dist. LEXIS 118052 (N.D. Cal. 2015) ……….……………….. 25

*In re Immune Response Securities Litigation*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ………………………….……..… 17

*In re Online DVD-Rental Antitrust Litigation*,
    779 F.3d 934 (9th Cir. 2015) ……………….………………...………..... 18, 19

*In re Portal Software, Inc. Securities Litigation*,
    2007 U.S. Dist. LEXIS 88886 (N.D. Cal. 2007)……..……………..……... 19

# TABLE OF AUTHORITIES
### (continued)

*Knickerbocker v. City of Stockton*,
  81 F.3d 907 (9th Cir. 1996) ……………………..…..…………..……….... 20

*Lee v. The Timberland Co.*,
  2008 U.S. Dist. LEXIS 108098 (N.D. Cal. 2008) ..…………………... 10, 16

*Linney v. Cellular Alaska Partnership*,
  151 F.3d 1234 (9th Cir. 1998) ……………..…………………………..…. 11

*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) …………….…..…………………..…. 10

*Mendoza v. United States*,
  623 F.2d 1338 (9th Cir. 1980) …..…………..…..………………….…. 13

*Morales v. Stevco, Inc.*,
  2011 U.S. Dist. LEXIS 130604 (E.D. Cal. 2011) ………………………. 18

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) ……………………………….…...…. 21, 22

*Officers for Justice v. Civil Service Commission*,
  688 F. 2d 615 (9th Cir. 1982) …………………..…………………….. 10

*Ontiveros v. Zamora*,
  303 F.R.D. 356 (E.D. Cal. 2014) ……..…………….…………………….. 15

*Parkinson v. Hyundai Motor Am.*,
  796 F.Supp.2d 1160 (C.D. Cal. 2010) …..……..…………..…………... 20

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986) ……..…………………..…………..…………….. 20

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) ……..……………………..…………….. 18

*Prince v. Burberry Ltd.*,
  2016 U.S. Dist. LEXIS 40535 (C.D. Cal. 2016) ……..……………….. 10, 16

# TABLE OF AUTHORITIES
### (continued)

*Radcliffe v. Experian Info. Solutions, Inc.*,
    715 F.3d 1157 (9th Cir. 2013) ……………….………………………………… 14

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) …………………….………………………. 13, 14

*Rutti v. Lojack Corp.*,
    19 Wage & Hour Cas. 2d (BNA) 938 (C.D. Cal. 2012) …..….……. 19, 21-23

*Selk v. Pioneers Memorial Healthcare District*,
    159 F. Supp. 3d 1164 (S.D. Cal. 2016) ……………………………. 11-13, 15

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) …………………….…………………….…. 14

*Tennessee Coal, Iron & R.R. v. Muscoda Local No. 123*,
    321 U.S. 590 (1944) …………….…….………………………………..… 22

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) ……………….…………..………..… 16, 23

*Van Vranken v. Atlantic Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ……..………………..……… 21, 25

*Vasquez v. Coast Valley Roofing*,
    266 F.R.D. 482 (E.D. Cal. 2010) ……….……………………………. 18

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ……….……………...…..… 16, 18-21

Plaintiff David Denkin ("Plaintiff") respectfully submits the following Memorandum of Points and Authorities in support of the concurrently filed Unopposed Motion for Approval of Settlement and Attorney Fees under the Fair Labor Standards Act (the "Motion").

## I.   INTRODUCTION

After one and one-half (1 ½) years of litigation and a day-long mediation before the Hon. Peter D. Lichtman (Ret.), Plaintiff David Denkin is pleased to seek the Court's approval of the settlement he has reached with the County of San Bernardino (the "Defendant" or "County"), on his own behalf and on behalf of the twenty-seven (27) other opt-in plaintiffs (28 total, collectively the "Plaintiff Class"), for unpaid overtime under the Fair Labor Standards Act (the "FLSA").[1]

The proposed settlement is fair and reasonable for members of the Plaintiff Class.  Despite the numerous defenses available to Defendant as to both liability and damages, the settlement provides for payment of $935,000.00 in damages to the members of the Plaintiff Class, to be divided among the class members based upon the number of weeks they were employed during the recovery period.  This represents as much as ***ninety-five percent (95%)*** of the estimated overtime compensation allegedly due to the Plaintiff Class over the past *three (3) years*.  Defendant also agrees to refrain from taking any action against or regarding any class member for any violation of policy arising out of or relating to the claims brought in this lawsuit.  The settlement further provides for an enhancement fee to plaintiff Denkin of $15,000.00

---

[1]    The following employees timely opted in to this action: (1) Adams, Lee Ann; (2) Aldecoa, Sarah; (3) Arechiga, Angelica; (4) Bremer, Randy; (5) Cerda, Lupe; (6) Chang, Amy; (7) Corral, Maria; (8) Denkin, David; (9) DeSouza, Carol; (10) Evans, Cotina; (11) Harmon, Cheerie; (12) Heintz, Lisa; (13) Humpheries, Sharon; (14) Jimenez, Elva; (15) Lighfoot, Lawanda; (16) McDonald, Samuel; (17) Muni, Carman; (18) Ocasio, Samuel; (19) Pour-Sanae, Saman; (20) Randle, Jeremiah; (21) Reeve, Linda; (22) Ruiz, Jose; (23) Schiedow, Silvia; (24) Tabije, Christopher; (25) Torres, Maria; and (26) Villegas, Jennifer. Also, for the purposes of settlement, the parties stipulated to allow the following employees to opt-in for the purposes of settlement only: (1) Lauve, Amber; and (2) Mariona, Amanda. *See* [Docket 62 (Stipulation)] and [Docket 65 (Order)].

MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT

for his actions taken and risks incurred on behalf of the Plaintiff Class.

The settlement provides for an additional payment of up to $450,000.00 in reasonable attorney fees and costs, subject to approval by the Court.[2] The agreed amount is less than Class Counsel's "lodestar" and is within the percentage range typically approved by the courts. It is clearly appropriate in light of the exceptional results obtained on behalf of the Plaintiff Class, both monetary and non-monetary, as well as the fact that Class Counsel accepted this case on a pure contingency basis and funded the costs of litigation. There was absolutely no collusion as to the amount of attorney fees and costs, since the parties did not even discuss the issue until after the amount of payment to the Plaintiff Class had been agreed upon.

Plaintiff respectfully requests that the Court approve the proposed *Settlement Agreement* (the "Settlement" or "Agreement") attached to the concurrently filed Notice of Lodgment (the "NOL") as <u>Exhibit A</u>, approve Plaintiff's request for attorney fees and costs in the amount of $450,000.00, and enter the concurrently submitted Proposed Order. As explained below, the settlement is a fair and reasonable resolution to a *bona fide* dispute between the parties as to the existence, nature and extent of Defendant's liability in this case, and the agreed upon attorney fees and costs are reasonable under the FLSA and Ninth Circuit precedent.

## II.   SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS

### A.   Nature of the Claims and Defenses

Plaintiff filed this action on January 7, 2016 to recover overtime wages allegedly due to Department of Aging and Adult Services ("DAAS") social workers employed by Defendant on or after January 7, 2013. *See* [Docket 1 (Complaint)].

Plaintiff alleges that Defendant suffered and permitted its DAAS social workers to manage their caseloads through working "unapproved" and uncompensated

---

[2]   In the event the Court does not grant Plaintiff's request for attorney fees and costs in the amount of $450,000.00, or his request for a $15,000.00 incentive payment, the Settlement provides for the amount of any reduction to be added to the $935,000.00 settlement fund to be paid to the members of the Plaintiff Class.

overtime during numerous "time study" months, as well as from home and through their unpaid meal breaks. *See* Papaefthimiou Decl., ¶4.[3]   Plaintiff further contends that Defendant has never informed its social workers that they are entitled to be compensated for "unapproved" overtime time in the first place, and has failed to provide a mechanism through which such "unapproved" overtime may be recorded. Id. Plaintiff asserts that Defendant had knowledge that its DAAS social workers were working uncompensated overtime due to numerous complaints, as well as their caseloads (which Plaintiffs believe Defendant knew were impossible to manage without overtime) and monthly completion requirements. Id.

Defendant has disputed that the members of the Plaintiff Class worked uncompensated overtime, since, it alleges, the caseloads placed upon its DAAS social workers did not necessarily require them to work overtime. *See* Papaefthimiou Decl., ¶5. Defendant also argued that it frequently offered overtime and that it would work with any social worker that was having difficulty completing their cases within the allotted time. Id. Defendant denied that it had any knowledge that DAAS social workers were working uncompensated overtime, since the overtime allegedly worked was performed away from the office and was not reported. Id. Defendant has argued that its policy was for all time to be reported, and has always paid all overtime reported by its social workers. Id. Finally, Defendant disputed the number of hours of overtime claimed by members of the Plaintiff Class and asserted that there is a lack of documentation to support the overtime hours allegedly worked.

**B.    The Conditionally Certified Class and Notice**

On June 20, 2016, Plaintiff filed a motion to conditionally certify this matter as a collective action under the FLSA. *See* [Docket 16]. Plaintiff's motion was supported by the declarations of seven (7) social workers, including Plaintiff. *See* [Docket 16-4

---

[3]   All references to the "Papaefthimiou Decl." refer to the concurrently filed "Declaration of Alexander E. Papaefthimiou in Support of Unopposed Motion to Approve Settlement and Attorney Fees Under Fair Labor Standards Act."

through 16-11].  Defendant filed opposition papers on June 27, and Plaintiff filed reply papers on July 1. *See* [Docket 18 and 19].  An additional social worker submitted a declaration in support of Plaintiff's reply. *See* [Docket 19-3].

On August 18, 2016, the Court ordered Plaintiff to file supplemental declarations from the seven (7) social workers other than Plaintiff, no later than August 25, 2016, "that address, if applicable, the declarants' personal experience with the practices described" in their prior declarations. *See* [Docket 26 (Order)].  The Court also allowed Defendant the opportunity to submit a response to the supplemental declarations on or before September 2, 2016. Id.  Pursuant to the Court's Order, Plaintiff filed seven (7) supplemental declarations on August 25 and Defendant filed its response on September 2.

On September 19, 2016, the Court ruled on Plaintiff's Motion to Conditionally Certify, and granted it "with regard to social workers employed at the Rancho Cucamonga office." *See* [Docket 36 (Certification Order)].

Thereafter, a dispute arose regarding the type of notice required by the Court, with Defendant taking the position that the Certification Order did not require Defendant to either provide notice by mailing or provide the addresses of members of the Plaintiff Class to Plaintiff.  When the parties were unable to resolve their dispute through meet and confer efforts, Plaintiff filed an *ex parte* application for an order requiring compliance with notice to the Plaintiff Class on October 26, 2016. *See* [Docket 43 (*Ex Parte* Application)].  Defendant filed an opposition on October 27 (Docket 47) and Plaintiff filed a reply on October 28 (Docket 48).

On November 2, 2016, after hearing argument from counsel, the Court ordered Defendant "to promptly provide notice by mail to the Plaintiff Class". *See* [Docket 50 (Order)].  Notice was thereafter mailed and Plaintiff was provided with the addresses of class members.  The opt-in period expired on or around February 25, 2017.

By the close of the opt-in period, including plaintiff Denkin, twenty-six (26) members of the plaintiff class had opted in. *See* [Docket 1, 21, 29, 32 and 53-57

(Notices of Opt-Ins)]. After the opt-in period had expired, the parties stipulated to allow two (2) additional members of the plaintiff class to opt in for the purposes of settlement only, bringing the size of the Plaintiff Class to twenty-eight (28) DAAS social workers. *See* [Docket 61 (Stipulation)].

### C. Investigation and Discovery

The parties engaged in extensive discovery to evaluate the claims of the Plaintiff Class, as well as the defenses available to Defendant.

On May 19, 2016, Plaintiff served his first set of interrogatories and first set of requests for production. *See* Papaefthimiou Decl., ¶8. On August 1, 2016, Plaintiff served his second set of interrogatories, second set of requests for production, and first set of requests for admission. Following the conditional certification of this matter, in March of 2017, Defendant served interrogatories upon sixteen (16) of the opt-in plaintiffs. Plaintiffs served responses on April 18, 2017. Furthermore, all of Defendant's notices of deposition contained requests for production of documents.

Defendant took the deposition of plaintiff Denkin for the first time on June 7, 2016. *See* Papaefthimiou Decl., ¶9. Defendant deposed plaintiff Denkin for a second time on March 9, 2017. Id. On March 30, 2017, Defendant took the depositions of opt-in plaintiffs Carol DeSouza and Lisa Heintz. Id. Opt-in plaintiffs Cherrie Harmon and Lupe Cerda were deposed on March 31, and Defendant deposed opt-ins Angelica Arechiga and Carman Muni on April 3. Id. Plaintiff deposed supervisors Teresa Alarcon and Amy Shackelford on March 14, 2017, and supervisor Deborah Farlow on March 21. Id. Defendant's higher-level administrators and officers were also deposed, with Deborah Billings-Merlos and Roxanne Young deposed on March 15, and Liz Rodriguez and Robert Bennett deposed on March 29, 2017. Id.

Collectively, the parties took the depositions of fourteen (14) witnesses. *See* Papaefthimiou Decl., ¶10. Plaintiff served, in sum, five (5) interrogatories, ten (10) requests for admission, and one-hundred and ten (110) requests for production. Id. Defendant served a total of one-hundred and ninety-two (192) interrogatories and over

two hundred (200) requests for production. Id.  Defendant produced over six-thousand six-hundred (6,600) pages of documents, and Plaintiffs produced over seven-hundred and fifty (750) pages. Id.

### D.  Reasonable Estimate of Amount of Recovery

Plaintiff alleges that, on average, members of the Plaintiff Class spent approximately seven (7) hours per week working at home and/or through their unpaid meal breaks for Defendant, at their approximate average overtime rate of $40.00 per hour, for a total of $280.00 per week in uncompensated overtime. *See* Papaefthimiou Decl., ¶18 and NOL, Exhibit B (Discovery Responses).  Per Plaintiff's estimate, which admittedly does *not* account for vacation or leave time, Defendant owes overtime for approximately 5,041 combined weeks from the commencement of the Class Period to the date of the settlement. Id., ¶19.  Per Defendant's estimate, which it represents *does* account for vacation and leave time, members of the Plaintiff class worked 3,506 combined weeks during the past three (3) years. Id.

Thus, the estimate of overtime allegedly owed to the Plaintiff Class during the three (3) year maximum Class Period for *willful* violations is between approximately $982,000.00 and $1,411,480.00.[4] *See* Papaefthimiou Decl., ¶20.  Defendant has contended that these estimates may be overstated, since they assume that the amount of uncompensated overtime per month was the same throughout the recovery period, despite the fact that less overtime may have been worked off-the-clock in months were overtime was authorized.

### E.  Settlement Negotiations

The parties did not discuss settlement until after this matter had been conditionally certified as a collective action and discovery was completed. *See* Papaefthimiou Decl., ¶12; Garrison Decl., ¶5 and Richmond Decl., ¶5.[5]

---

[4] ($280 / week) *x* (3,506 weeks) = $981,680.00.
  ($280 / week) *x* (4,760 weeks) = $1,411,480.00.

[5]   All references to the "Garrison Decl." refer to the concurrently filed "Declaration of

On April 21, 2017, the parties attended a mediation with the Judicial Arbitration and Mediation Service (JAMS) before the Hon. Peter Lichtman (Ret.). *See* Papaefthimiou Decl., ¶13; Garrison Decl., ¶6 and Richmond Decl., ¶6. In addition to counsel for both parties and a representative from the County, the mediation was attended by at least fifteen (15) members of the Plaintiff Class. Id. The parties did not discuss the issue of attorney fees or costs until *after* the amount of payment to members of the Plaintiff Class had been agreed upon. Id. At the conclusion of the mediation, counsel for the parties signed a Memorandum of Understanding (the "MOU"), which is attached to the Agreement.

On April 27, 2017, the parties filed a Notice of Settlement [Docket 63], which attached a copy of the signed MOU. The Notice of Settlement provides *inter alia*:

> The Parties have agreed as to the amount of payment to the Class Members in settlement for a release of all claims for uncompensated overtime that occurred while each class member was employed at the Rancho Cucamonga DAAS office during the Class Period ($935,000.00) as well as the additional amount to be paid to plaintiff DENKIN as an incentive / enhancement payment ($15,000.00). A Memorandum of Understanding executed by the Parties is attached hereto as Exhibit A.

> The Parties are now conferring regarding the amount of attorney fees and costs to be paid to Plaintiff's counsel under 29 U.S.C. § 216(b). In the event the Parties are unable to come to an agreement as to the amount of attorney fees and costs within thirty (30) days of this Notice, the Parties agree that, for the purposes of settlement, plaintiff is entitled to attorney fees and costs under 29 U.S.C. § 216(b), and that the amount of such fees and costs shall be determined by the Court upon motion but in an amount not to exceed $450,000.00.

> The Parties' settlement requires approv[al] from Defendant's Board of Supervisors.

---

Gregory M. Garrison in Support of Unopposed Motion to Approve Settlement and Attorney Fees Under Fair Labor Standards Act."

All references to the "Richmond Decl." refer to the concurrently filed "Declaration of Megan A. Richmond in Support of Unopposed Motion to Approve Settlement and Attorney Fees Under Fair Labor Standards Act."

MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT

The parties thereafter negotiated the terms of a long-form settlement agreement. *See* Papaefthimiou Decl., ¶17; Garrison Decl., ¶10 and Richmond Decl., ¶10; *See also* NOL, <u>Exhibit C</u> (Emails re: settlement negotiations).  Following these extensive final negotiations, the parties executed the concurrently submitted Settlement Agreement (the "Settlement" or "Agreement").

## III.   TERMS OF THE SETTLEMENT

<u>Settlement Fund.</u>  Based on the disputed issues and the parties' assessment of the case, the Parties agree on a settlement fund of $935,000.00 (the "Settlement Fund") to be paid to a Settlement Administrator on behalf of the Plaintiff Class within ten (10) days after the Court's approval of the Settlement. *See* NOL, <u>Exhibit A</u> (Settlement Agreement) at Terms §§ 2.A. and 6.  The parties agree that the settlement administrator will distribute the Settlement Fund to the members of the Plaintiff Class per an allocation determined by plaintiff Denkin and Class Counsel, estimated based upon the amount of time during the Class Period each member of the Plaintiff Class was employed as a DAAS social worker at Defendant's Rancho Cucamonga office. Defendant shall be solely responsible for the costs of the settlement administrator.

<u>Service Payment.</u>  In addition to the Settlement Fund, Defendant agrees to pay plaintiff Denkin a service payment of $15,000.00 (the "Service Payment") within ten (10) days of the Court's approval of the Settlement "in recognition of the Named Plaintiff's efforts to pursue the claims raised in this Lawsuit on behalf of the Plaintiff Class, including, but not limited to, providing factual information and otherwise assisting with the prosecution of the litigation, as well as his risks taken on behalf of the Plaintiff Class." *See* NOL, <u>Exhibit A</u> (Settlement) at Terms § 2.B.

<u>Non-Retaliation.</u>  The Settlement also provides that Defendant shall not take any action against or regarding and member of the Plaintiff Class for any claims, liability or violation of policy arising out of or related to the claims made in this lawsuit (including policies regarding overtime, reporting time, telecommuting / working from home, confidentiality, personally Identifiable Information [PII], and/or

working through meal periods). *See* NOL, <u>Exhibit A</u> (Settlement) at Terms § 4.

**Release.**  The release in the Settlement is properly limited to "any and all claims for unpaid overtime wages, liquidated damages, prejudgment interest, individual rights under Section 16(b) of the FLSA, and any other claims for damages as alleged in the Complaint, that occurred or are alleged to have occurred while the class member was employed at the COSB Rancho Cucamonga DAAS office from January 7, 2013 to the Effective Date of this Agreement only." *See* NOL, <u>Exhibit A</u> (Settlement) at Terms §§ 1.I, 1.J and 3.

**Attorney Fees / Costs.**  The issue of attorney fees and costs was not negotiated until after the parties had reached an agreement as to the amount of the Settlement Fund to be paid to members of the Plaintiff Class.  Regarding attorney fees and costs, the Settlement provides that, in addition to the Settlement Fund and Service Payment, Defendant "shall pay an additional sum as attorney fees and costs pursuant to 29 U.S.C. § 216(b)" in an amount to be determined by the Court upon motion by Plaintiff. The parties agree that Defendant would not oppose any motion for attorney fees and costs up to $450,000.00. *See* NOL, <u>Exhibit A</u> (Settlement) at Terms § 2.C.

**Approval by Court.**  The Settlement Agreement acknowledges that it must be approved by the Court, and that it is null and void if the Court declines to approve it. *See* NOL, <u>Exhibit A</u> (Settlement Agreement) at Terms § 5.A.   However, the Settlement Agreement provides that it does not become null and void if the Court reduces the Service Payment and/or reduces the award of fees and costs to less than $450,000.00. <u>Id</u>.  If the Court makes any such reductions, they shall not revert back to Defendant, but shall instead be added to the Settlement Fund and distributed to the Plaintiff Class, such that the total of the Settlement Fund, Service Payment and fees and costs to Class Counsel remains $1,400.000.00. <u>Id</u>.

## IV.    THE SETTLEMENT IS FAIR AND REASONABLE TO THE CLASS

"An employee's rights under the FLSA cannot be abridged or waived, and thus an employee's claim under the FLSA may be settled only under the supervision of the

Secretary of Labor or a district court." *Prince v. Burberry Ltd.*, 2016 U.S. Dist. LEXIS 40535 at *2 (C.D. Cal. 2016) (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). When reviewing the proposed settlement, the Court "must determine whether the settlement is a fair and reasonable resolution of a bona fide dispute." *Id*. at *3 (citing *Lee v. The Timberland Co.*, 2008 U.S. Dist. LEXIS 108098 (N.D. Cal. 2008)). "The FLSA also requires that a settlement agreement include an award of reasonable fees." *Lee*, 2008 U.S. Dist. LEXIS 108098 at *4.

If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food*, 679 F. 2d at 1354. In determining whether the settlement is fair and reasonable the Court should consider:

(1) the existence of fraud or collusion behind the settlement;

(2) the complexity, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the probability of plaintiff's success on the merits;

(5) the range of possible recovery; and

(6) the opinions of counsel.

*See, e.g., Officers for Justice v. Civil Service Commission*, 688 F. 2d 615, 625 (9th Cir. 1982). The Court should also be mindful of the strong presumption in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1145 (M.D. Fla. 2005).

As discussed below, the Settlement is fair and reasonable to the Plaintiff Class and should be approved by the Court.

**Range of Possible Recovery.**  The Plaintiff Class receives $935,000.00, with an average recovery of over $33,000.00 per class member.[6]  This represents as much as ***ninety-five percent (95%)*** of the estimated overtime compensation allegedly due

---

[6]   $935,000.00 / 28 class members = $33,392.86 per class member.

over the past **three (3) years**. *See Selk v. Pioneers Mem. Healthcare Dist.,* 159 F. Supp. 3d 1164, 1175 (S.D. Cal. 2016) (settlement of between 26% to 50% of best possible recovery "in the range of reasonableness for wage and hour actions"). This is significant, since the Plaintiff Class would only be entitled to a three (3) year recovery period – as opposed to the normal two (2) year recovery period – if they were able to prove that Defendant's alleged violations of the FLSA were willful. *See* 29 U.S.C. § 255(a).  On this point, the parties note that Defendant has denied at all time, and continues to deny, that it ever had any actual or constructive knowledge that its DAAS social workers allegedly worked uncompensated overtime.

**Opinions of Counsel and Plaintiffs.**  In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Selk*, 159 F. Supp. 3d at 1176.  Here, Class Counsel have handled numerous FLSA collective actions before this matter and believe that the Settlement is fair and reasonable to the Plaintiff Class. *See* Papaefthimiou Decl., ¶¶ 3, 27-34; Garrison Decl., ¶¶ 3, 15; and Richmond Decl., ¶¶3, 15-17.  Also, it must be noted that the fifteen (15) members of the Plaintiff Class who attended the mediation all agreed to the $935,000.00 Settlement Fund and approximate allocation thereof, as well as the Service Payment to plaintiff Denkin. *See* Denkin Decl.; Papaefthimiou Decl., ¶¶13-14; Garrison Decl., ¶¶6-7; and Richmond Decl., ¶¶6-7.

**Stage of the Proceedings.**  This factor weighs in favor of approval if the parties had "sufficient information to make an informed decision about settlement". *Selk,* 159 F. Supp. 3d at 1177 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).  Here, the settlement was reached after extensive written discovery, the production of over seven thousand (7,000) pages of documents, and fourteen (14) depositions.   Where, as here, a settlement occurs in "an advanced stage of the proceedings", the clear indication is that "the parties carefully investigated the claims before reaching a resolution." *Selk*, 159 F. Supp. 3d at 1177.

**Risk of Future Proceedings.**  Defendant disputed that the members of the Plaintiff Class worked uncompensated overtime, since, it alleged, the caseloads placed upon its DAAS social workers did not necessarily require them to work overtime.  Defendant argued that it frequently offered overtime and that it would work with any social worker that was having difficulty completing their cases within the allotted time.  Defendant further denied that it had any knowledge that DAAS social workers were working uncompensated overtime, since the overtime allegedly worked was performed away from the office and was allegedly not reported.  Defendant asserted that its policy was for all time to be reported, and has always paid all overtime reported by its social workers.

Defendant also disputed the number of hours of overtime claimed by members of the Plaintiff Class and argued that there is a lack of documentation to support the overtime hours allegedly worked.  Members of the Plaintiff Class generally did not keep records of the uncompensated overtime they allegedly worked, and Defendant disputed the reasonableness of and foundation for their estimates.  Defendant also asserted that Plaintiffs' estimates fail to account for any vacation, sick days or any other time they received during the relevant time period.

**Cost of Future Proceedings.**  The Settlement avoids costly future proceedings, including Defendant's anticipated motion to de-certify and trial. *See* Papaefthimiou Decl., ¶6.  Also, the majority of the members of the Plaintiff Class only minimally participated in these proceedings and were not deposed.  This would not be the case if this matter were to proceed to trial and each class member would be required to testify.  Finally, if this matter were to continue through trial and appeal, it could be a significantly longer period before members of the Plaintiff Class would receive any compensation, assuming they prevailed on their claims.

**Scope of the Release.**  "Courts review the scope of any release provision in a FLSA settlement to ensure that class members are not pressured into forfeiting claims, or waiving rights, unrelated to the litigation." *See Selk*, 159 F. Supp. 3d at 1178.  Here,

the release is properly limited to the wage and hour claims at issue in this action. *See* NOL, <u>Exhibit A</u> (Settlement Agreement) at Terms §§ 1.I, 1.J and 3.

**Lack of Collusion.**  The Settlement is the result of an arms-length negotiation, and there was no collusion. *See* Papaefthimiou Decl., ¶¶11-17; Garrison Decl., ¶¶4-10; and Richmond Decl., ¶¶4-10; and NOL, <u>Exhibit C</u> (emails re: settlement).  The parties did not even discuss settlement until mediating before a retired judge, at which point the Plaintiff Class had been conditionally certified and discovery had been completed. Furthermore, the parties did not discuss the issue of attorney fees and costs until after the amount of the Settlement Fund paid to the Plaintiff Class had been negotiated. *See Mendoza v. United States*, 623 F.2d 1338, 1353 (9th Cir. 1980) (noting "the evil of simultaneously negotiated attorney fees").  Even then, the parties agreed that, in the event the Court reduces Plaintiffs' $450,000.00 fee and costs request, the amount of any such reduction shall be added to the Settlement Fund for the benefit of the Plaintiff Class. *See* NOL, <u>Exhibit A</u> (Settlement Agreement) at Terms § 5.A. Finally, the amount of payment to each class member out of the Settlement Fund is fairly approximated based upon the amount of time each employee has been employed by Defendant as a DAAS social worker at the Rancho Cucamonga office during the Class Period. *See* Papaefthimiou Decl., ¶22.

## V.    THE AGREED UPON SERVICE PAYMENT IS REASONABLE

Plaintiff respectfully requests the Court to approve the Service Payment of $15,000.00. *See* NOL, <u>Exhibit A</u> (Settlement Agreement) at Terms § 2.B.

"Incentive awards are fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *See Selk,* 159 F. Supp. 3d at 1177 ("At its discretion, a district court may award an incentive payment to the named plaintiffs in a FLSA collective action to compensate them for work done on behalf of the class.").  Generally speaking, incentive awards are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. Incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant "reputational risk" by suing their employers. *Id.*

Courts have the discretion to review incentive awards "to determine whether they destroy the adequacy of the class representatives", and concerns are "especially pressing" where the proposed award "greatly exceed the payments to absent class members." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013). The district court considers "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

Plaintiff Denkin has been instrumental in this litigation. *See* Denkin Decl., ¶6; Papaefthimiou Decl., ¶¶23-26; Garrison Decl., ¶¶11-14; and Richmond Decl., ¶¶11-14.[7] He gathered and synthesized numerous documents from both his own records and public sources. He spent numerous hours on the telephone with Class Counsel providing valuable information and discussing the factual and legal basis for the claims of the Plaintiff Class. Plaintiff Denkin was also the "point person" and organizer of the class members, was responsible for obtaining declarations from the seven (7) additional social workers filed in support of his motion for conditional certification, and assisted many of the opt-in plaintiffs with the completion and submission of the opt-in forms. He organized meetings between Class Counsel and members of the Plaintiff Class on more than one occasion. He also submitted three (3) declarations in this matter, was deposed twice, responded to written discovery,

---

[7]   All references to the "Denkin Decl." refer to the concurrently filed "Declaration of David Denkin in Support of Unopposed Motion to Approve Settlement and Attorney Fees Under Fair Labor Standards Act."

1   and attended the mediation.  In the opinion of Class Counsel, the outcome of this
2   matter would not have been as favorable without his efforts.

3       The amount of the recovery obtained on behalf of the Plaintiff Class is more
4   than sufficient to rebuke any accusation that plaintiff Denkin accepted a "suboptimal
5   settlement[] at the expense of the class members whose interests [he was] appointed
6   to guard[.]" *Selk,* 159 F. Supp. 3d at 1177.  Indeed, even with the $15,000.00 Service
7   Payment taken into account, plaintiff Denkin will recover ***less*** under the Settlement
8   than numerous other members of the Plaintiff Class. *See* NOL, Exhibit A (Settlement
9   Agreement) at Exhibit 3 (Allocation of Settlement Fund).  The Service Payment,
10  itself, is less than *half* of the average $33,392.86 recovery to members of the Plaintiff
11  Class. *See* fn.6, *supra*; *See also Ontiveros v. Zamora*, 303 F.R.D. 356, 366 (E.D. Cal.
12  2014) (approving $15,000 incentive payments for average recovery of $3,700).

13      Plaintiff Denkin has, at all times, sought to litigate this matter as a collective
14  action rather than for his own individual gain, and has never sought to favor his own
15  interests over those of the Plaintiff Class. Denkin Decl., ¶7.   Nothing in the
16  declarations submitted herewith or in the terms of the Settlement "indicates that
17  [plaintiff's] agreement to the settlement was conditioned on a promise of [him]
18  receiving an incentive award." *Aguilar v. Wawona Frozen Foods*, 2017 U.S. Dist.
19  LEXIS 76751 at *21 (E.D. Cal. 2017).  To the contrary, the Settlement is not
20  contingent upon the Court's approval of the Service Payment, and Plaintiff has agreed
21  to allow any portion of the payment not approved by the Court to revert to the Plaintiff
22  Class.

23      Plaintiff took a "reputational risk" in bringing this action and serving as class
24  representative against his employer, was concerned about retaliation, has endured
25  harsh remarks for his actions, and may suffer for them in the future. Denkin Decl., ¶8.

26      Finally, all fifteen (15) of the Class Members present at the mediation agreed
27  to the Service Payment. *See* Denkin Decl., ¶5; Papaefthimiou Decl., ¶14; Garrison
28  Decl., ¶7 and Richmond Decl., ¶7.

## VI.  THE AGREED UPON FEES AND COSTS ARE REASONABLE

The FLSA "requires that a settlement agreement include an award of reasonable fees." *Lee*, 2008 U.S. Dist. LEXIS 108098 at *4; *See Prince*, 2016 U.S. Dist. LEXIS 40535 at *3 and 29 U.S.C. §216(b). "The case law construing what is a 'reasonable' fee applies uniformly to all federal fee-shifting statutes." *Haworth v. State of Nevada*, 56 F.3d 1048, 1051 (9th Cir. 1995). "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method for awarding attorneys' fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

In addition, "[t]he Ninth Circuit has held that '[o]ut-of-pocket litigation expenses' are reimbursable as part of an attorney's fee award, distinct from the costs awarded to plaintiffs as part of an application to tax costs pursuant to 28 U.S.C. § 1920." *Hoffman v. Constr. Protective Servs.*, 2006 U.S. Dist. LEXIS 100559 at *24 (C.D. Cal. 2006) (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)); *See Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir.1988) (FLSA authorizes an award of costs as part of a "reasonable attorney's fee," which would not be authorized under Rule 54 or 28 U.S.C. § 1920)) and *Atwood v. PCC Structurals, Inc.*, 2016 U.S. Dist. LEXIS 45737 at *27-28 (Dist. Or. 2016).

Pursuant to the terms of the Settlement, Plaintiff is requesting the Court award a total of $450,000.00 in attorney fees and costs. As explained below, Plaintiff seeks to recover costs in the amount of $23,052.00, which would result in a fee award of $426,948.00. To the extent that the Court finds Plaintiff is not entitled to recover any of his claimed costs, Plaintiff respectfully requests that the Court still award him the agreed upon total of $450,000.00 in attorney fees and costs by increasing the amount of attorney fees awarded up to a maximum of $450,000.00.

### A.  Plaintiff is Entitled to His Claimed Costs and Expenses

Expense awards included in an award of attorney fees "should be limited to typical out-of-pocket expenses that are charged to a fee-paying client and should be

reasonable and necessary." *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).  These can include reimbursements for "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *Id.*; *See Aguilar*, 2017 U.S. Dist. LEXIS 76751 at *19 (approving $49,538.26 in expenses).

In the immediate case, Class Counsel incurred the following reasonable and necessary expenses:

| *Description* | *Amount* | *Reference* |
|---|---|---|
| Legal Assistant Fees | $ 2,970.00 | Richmond Decl., ¶ 24 |
| Filing Fees / Chambers Copies | $ 1,846.00 | NOL, Ex. E at 1-13 |
| Service of Process | $ 79.00 | NOL, Ex. E at 14 |
| Class Notice Administrator Fee | $ 400.00 | NOL, Ex. E at 15 |
| Deposition Fees | $ 9,599.35 | NOL, Ex. E at 16-19 Papaefthimiou, ¶ 40 Richmond Decl., ¶ 23 |
| Reproduction / Mailing | $ 506.86 | NOL, Ex. E at 20-21 Richmond Decl., ¶ 23 |
| Mediation Fees | $ 4,200.00 | Richmond Decl., ¶ 23 |
| Travel / Mileage | $ 2,479.33 | NOL, Ex. E at 22-23 |
| Lodging | $ 972.33 | NOL, Ex. E at 24-30 |
| **TOTAL** | **$ 23,052.87** | |

Plaintiff, therefore, respectfully requests the Court to approve an award of $23,052.00 in litigation costs and expenses.

## B.   The Requested Attorney Fees are Reasonable Under the "Percentage of Recovery" Calculation Method

When applying the percentage-of-recovery method, "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total

settlement value, with 25% considered the benchmark." *Morales v. Stevco, Inc.*, 2011 U.S. Dist. LEXIS 130604 at \*32 (E.D. Cal. 2011) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). "Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes 'extremely risky' litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis." *Aguilar*, 2017 U.S. Dist. LEXIS 76751 at \*11 (citing *Vizcaino*, 290 F.3d at 1048-50 and *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015)).

The Ninth Circuit has approved the use of "lodestar" cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Vizcaino*, 290 F.3d at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted.") However, "[w]here a lodestar is merely being used as a cross-check, the court may use a rough calculation of the lodestar." *Aguilar*, 2017 U.S. Dist. LEXIS 76751 at \*14.

Plaintiff's requested attorney fees of $426,948.00 constitute 30% of the total recovery of $1.4 million. This is well within the "typical" range of acceptable fees in this Circuit. *See, e.g., Aguilar*, 2017 U.S. Dist. LEXIS 76751 at \*12 (approving attorneys' fees in the amount of 33⅓% of the common fund); *Downey Surgical Clinic, Inc. v. OptumInsight, Inc.*, 2016 U.S. Dist. LEXIS 145000 at \*32 (C.D. Cal. 2016) (approving 30% award); *Boyd v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 162880 at \*10 (C.D. Cal. 2014) (approving 33% award); *Garcia v. Gordon Trucking, Inc.*, 2012 U.S. Dist. LEXIS 160052 (E.D. Cal. 2012) (approving 33⅓% award); and *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482 (E.D. Cal. 2010) (same).

//

//

//

While the agreed upon amount exceeds the 25% "benchmark",[8] the Court should grant the requested fees based upon the exceptional results obtained for the class, the non-monetary benefits of the settlement, the risky nature of this litigation, and the fact that Class Counsel took this case on a contingent fee basis and advanced all costs. *See, e.g, In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 954-55; *Vizcaino*, 290 F.3d at 1048-50; and *Aguilar*, 2017 U.S. Dist. LEXIS 76751 at *11.

**Exceptional Results.**   Class Counsel obtained exceptional results obtained on behalf of the Plaintiff Class, which is to recover approximately **95%** of the alleged uncompensated overtime owed over the past three (3) years. *See Aguilar*, 2017 U.S. Dist. LEXIS 76751 at *13.  This is far greater than the percentage recovered in many other wage and hour class actions in this Circuit. *See*, *Bravo v. Gale Triangle, Inc.*, 2017 U.S. Dist. LEXIS 77714 (C.D. Cal. 2017) (settlement for 14 percent of possible recovery found reasonable); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (11 percent to 27 percent); *Elliott v. Rolling Frito-Lay Sales*, 2014 U.S. Dist. LEXIS 83796 (C.D. Cal. 2014) (31 percent); and *In re Portal Software, Inc. Sec. Litig*, 2007 U.S. Dist. LEXIS 88886 (N.D. Cal. 2007) (25 percent).

**Non-Monetary Benefits.**   In the context of the FLSA, "courts have consistently recognized that the 'fear of economic retaliation' will force workers 'quietly to accept substandard conditions,' dissuading employees from participating in lawsuits against their employers." *Rutti v. Lojack Corp.*, 19 Wage & Hour Cas. 2d (BNA) 938 at *17 (C.D. Cal. 2012).  This fear of retaliation remains after the action is filed.  To dissuade any possible acts of retaliation and provide peace of mind to members of the Plaintiff Class, Class Counsel obtained a broad anti-retaliation provision. *See* NOL, <u>Exhibit A</u> (Settlement Agreement) at Terms § 4.  It is of note that this anti-retaliation provision, which prohibits Defendant from disciplining class

---

[8]   In the immediate case, the "benchmark" award would be $350,000.00, since it represents 25% of the gross $1,400,000.00 recovery.

1  members for any violations of policy in any way arising out of or relating to the claims

2  in this action, is arguably broader than the anti-retaliation provision of the FLSA,

3  which prohibits adverse employment actions that would not have been taken "but for"

4  the filing of the lawsuit. *See Knickerbocker v. City of Stockton*, 81 F.3d 907, 911 (9th

5  Cir. 1996) and 29 U.S.C. § 215(a)(3).

6  **Risk of Litigation.**   As discussed above, the County had numerous defenses

7  to both liability and the calculation of damages, asserted that it paid all overtime that

8  had been reported, and the amount of uncompensated overtime alleged by members

9  of the Plaintiff Class was not documented. *See* §IV (Risk of Future Proceedings); *See*

10  *also* Papaefthimiou Decl., ¶5.  Thus, the success of this litigation was far from certain

11  at the outset, and Class Counsel took a substantial risk of both non-payment and being

12  held liable for the County's costs (see below).

13  **The Contingent Nature of the Fee.**   Class Counsel accepted this case on a

14  pure contingency basis and funded the costs of litigation. *See* Papaefthimiou Decl.,

15  ¶38; Garrison Decl., ¶21 and Richmond Decl., ¶21.  As detailed below and in the

16  concurrently submitted Billing Statements (Exhibit D to the NOL), Class Counsel

17  estimate that they, collectively, devoted approximately eight hundred and thirty (830)

18  hours to investigating, litigating and settling this case without payment.

19  **"Lodestar" Cross-Check.**   As discussed below, Class Counsel's "lodestar"

20  calculation exceeds the amount of requested fees, even before a multiplier is applied.

21  **C.    The Requested Attorney Fees are Reasonable Under the
22  "Lodestar" Calculation Method**

23  Under the "lodestar" method, the Court first multiplies the reasonable hours

24  expended by a reasonable hourly rate. *Pennsylvania v. Delaware Valley Citizens'*

25  *Council for Clean Air*, 478 U.S. 546, 565 (1986).  The Court may then enhance the

26  lodestar with a "multiplier", if necessary, to arrive at a reasonable fee in light of all

27  the circumstances.  In the Ninth Circuit, multipliers "ranging from one to four are

28  frequently awarded . . . when the lodestar method is applied." *Vizcaino*, 290 F.3d at

1051 n. 6 (approving multiplier of 3.65). Factors to be considered in assessing the propriety of such a multiplier include "the complexity of this case, the risks involved and the length of the litigation." *Id.* at 1051.[9] "Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995).

As detailed in the concurrently filed declarations of Class Counsel and their time log entries (Exhibit D), Class Counsel reasonably expended spent in excess of 830 hours in connection with this litigation, with a resulting base "lodestar" amount of $470,820.00. The chart below provides a summary:

| *Attorney* | *Rate* | *Hours* | *Total* |
|---|---|---|---|
| Gregory M. Garrison | $ 700 | 118.9 | $ 83,230.00 |
| Megan A. Richmond | $ 600 | 298.9 | $ 179,340.00 |
| Alexander E. Papaefthimiou | $ 500 | 416.5 | $ 208,250.00 |
| **TOTAL** | | **834.3** | **$ 470,820.00** |

In addition, Plaintiff is entitled to a multiplier, as discussed below.

## 1. The Number of Hours Worked are Reasonable

Courts "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) ("An attorney's sworn testimony that, in fact, [she] took the time claimed…is evidence of considerable weight on the issue of the time required."). To reduce the number of hours worked, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Blackwell*, 724 F. Supp. 2d at

---

[9] Factors "already subsumed in the lodestar inquiry" include (1) insufficient documentation; (2) quality of representation; (3) results obtained; (4) novelty and complexity of the issues; (5) special skill and experience of counsel; and (6) the superior performance of counsel. *Rutti v. Lojack Corp.*, 19 Wage & Hour Cas. 2d (BNA) 938 at *4. However, "in exceptional cases", the results obtained may "be used for 'double counting' purposes." *Id.* at fn.2.

1081. "It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee." *Moreno*, 534 F.3d at 1112.

The presumption that claimed hours are reasonable is essential because "the purposes of the [fee-shifting] statutes will not be met" unless plaintiffs' attorneys are "reasonably compensated for all their time." *Id*. "Additionally, because the FLSA is a remedial statute, it 'must not be interpreted or applied in a narrow grudging manner.'" *Rutti v. Lojack Corp.*, 19 Wage & Hour Cas. 2d (BNA) 938 at *8 (quoting *Tennessee Coal, Iron & R.R. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944)). It is of no consequence if some of the claimed hours were expended prior to the filing of the complaint. *See Charlebois v. Angels Baseball LP*, 2012 U.S. Dist. LEXIS 91069 at *11 (C.D. Cal. 2012) ("[T]he Court suspects that several of the complaints it dismisses every week fail to state a claim because attorneys spend too little time researching the grounds for their case; the Court sees no reason why it should punish the attorney that researches the law and facts before putting paper to pen.").

When the litigation includes claims that were unsuccessfully litigated, all hours spent on the unsuccessful claims are compensable as long as the unsuccessful claims were "related" to the successful ones. *See, e.g., Rutti*, 19 Wage & Hour Cas. 2d (BNA) 938 at *9-*10. "Unrelated claims are 'distinctly different' and based on different facts and legal theories, while related claims 'involve a common core of facts or [are] based on related legal theories.'" *Id*. at *10. If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation". *Id*. at *9.

Concurrently herewith, Class Counsel submit declarations and billing records setting forth the number of hours actually and reasonably expended in bringing this matter to a successful conclusion on behalf of the Plaintiff Class. *See* NOL, Ex. D (Billing Records). All of the hours were expended on factual and legal issues related

to the successful FLSA claims, and the results obtained on behalf of the Plaintiff Class are substantial – namely a $935,000.00 settlement averaging over $33,000.00 per class member and accounting for as much as ninety-five percent (95%) of the claimed unpaid overtime.  Plaintiff, therefore, respectfully submits that he is entitled to recover attorney fees for all hours claimed by Class Counsel.

## 2.      The Requested Hourly Rates are Reasonable

The United States Supreme Court has held that fee awards to public interest attorneys who do not charge their clients—such as Class Counsel—are "calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  The hourly rate due to counsel is not dependent upon the tasks performed, and it is proper for the Court to apply a uniform rate to all tasks performed by an attorney, even if it includes what could be characterized as "associate or paralegal work". *See Rutti*, 19 Wage & Hour Cas. 2d (BNA) 938 at *32-*33.

"Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determination in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Co.*, 896 F.2d 403,407 (9th Cir. 1990); *See Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991) (the submission of "declarations stating that the rate was the prevailing market rate in the relevant community [was]…sufficient to establish the appropriate rate for lodestar purposes").

Plaintiff seeks compensation at the rates of $700.00 for Gregory M. Garrison, $600.00 for Megan A. Richmond, and $500 for Alexander E. Papaefthimiou.  These rates are well within the range awarded in similar cases. *See*, *e.g.*, *Rutti v. Lojack Corp.*, 19 Wage & Hour Cas. 2d (BNA) 938 at *32-33 (Central District case in 2012 finding rates of $750 and $650 reasonable in FLSA case) and *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for attorneys with two to eight years of experience, and $720 per hour for

attorney with 21 years of experience); *See* Marrinan Decl., ¶9 (noting fee award in Central District of $695 per hour in 2009).

Plaintiff has established the reasonableness of the requested hourly rates through the declarations of Class Counsel setting forth their experience and qualifications, as well as the rates they have recovered or been awarded in the past. Papaefthimiou Decl., ¶¶27-37; Garrison Decl., ¶¶15-20 and Richmond Decl., ¶¶15-20.

The reasonableness of Class Counsel's hourly rates is further established by the declarations of four (4) other attorneys who litigate in the Central District of California.  The first attorney, Mr. Ed Chapin, has been practicing for over 44 years in areas including, but not limited to, employment class actions. *See* Chapin Decl., ¶¶1-8.  The second attorney, Mr. Grant Teeple, is a trial lawyer with approximately 31 years of experience. *See* Teeple Decl., ¶¶1-3.  Both Mr. Chapin and Mr. Teeple have worked closely with all three (3) Class Counsel in the past, and both attest to the reasonableness of their claimed rates in this District. *See* Chapin Decl., ¶¶9-12 and Teeple Decl., ¶¶4-7.

The third attorney, Mr. Michael Merrinan, has been practicing for over 36 years and tried over 100 jury trials. *See* Merrinan Decl., ¶¶1-8.  Mr. Marrinan has known Mr. Garrison for over 10 years and has observed him in trial, and attests as to the reasonableness of attorney Garrison's claimed rate in this District. *Id.*, ¶¶10-11.

The final attorney, Mr. Darren J. Quinn, is a trial lawyer with approximately 27 years of experience. *See* Quinn Decl., ¶¶1-3.  Mr. Quinn's practice includes complex intellectual property and class action cases. *Id*.  Mr. Quinn has worked closely with both Mr. Garrison and Mr. Papaefthimiou, and attests to the reasonableness of their claimed rates in this District. *Id.*, ¶¶4-6.

### 3.    Plaintiff is Entitled to a Multiplier

Plaintiff respectfully requests a multiplier to the claimed base "lodestar" amount to account for, among other things, the results obtained by Class Counsel, the

complexity of this collective action litigation, the importance of the rights vindicated, the length of this litigation, and the contingent nature of the fee. *See, e.g., Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) (multiplier of 1.67); *In re: Cathode Ray Tube Antitrust Litig.*, 2016 U.S. Dist. LEXIS 102408 at *10 (C.D. Cal. 2016) (multiplier of 1.96); *In re High-Tech Emple. Antitrust Litig.*, 2015 U.S. Dist. LEXIS 118052 at *10 (N.D. Cal. 2015) (multiplier of 2.2); *Parkinson v. Hyundai Motor Am.*, 796 F.Supp.2d 1160, 1170 (C.D. Cal. 2010) ("Where appropriate, multipliers may range from 1.2 to 4 or even higher"); *Van Vranken*, 901 F.Supp. at 298-99 (N.D. Cal. 1995) (multiplier of 3.6 was "well within the acceptable range for fee awards in complicated class action litigation" and "[m]ultipliers in the 3-4 range are common").

## VII.   CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court GRANT this Joint Application, approve the settlement of the claims of the Plaintiff Class under the Fair Labor Standards Act, approve the payment of $450,000.00 in attorney fees and costs, and enter the concurrently filed Proposed Order and Judgment.

Dated:   July 17, 2017

Respectfully submitted by,

LAW OFFICE OF
ALEXANDER E. PAPAEFTHIMIOU

 /s/ Alexander E. Papaefthimiou
Alexander E. Papaefthimiou

215 E. Daily Drive, Suite 28
Camarillo, California 93010
Telephone:     (805) 366-3909
Facsimile:     (805) 585-5410

MEGAN A. RICHMOND, APC
Megan A. Richmond
9255 Towne Centre Drive, Suite 500
San Diego, California 92121
Telephone:     (858) 622-7878

GREGORY M. GARRISON, APC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gregory M. Garrison
9255 Towne Centre Drive, Suite 500
San Diego, California 92121
Telephone:     (858) 622-7878

*Class Counsel*

MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT

## **CERTIFICATE OF SERVICE**

I hereby certify that, on July 17, 2017, I electronically filed the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AND ATTORNEY FEES UNDER FAIR LABOR STANDARDS ACT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record.

Dated: July 17, 2017

/s/ Alexander E. Papaefthimiou
Alexander E. Papaefthimiou (SBN 236930)